UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. |
| | Violations: |
| v. | Count One: Conspiracy to Commit Health Care Fraud (18 U.S.C. § 1349) |
| (1) FAITH NEWTON, and (2) WINNIE WARURU, | Count Two: Health Care Fraud; Aiding & Abetting (18 U.S.C. §§ 1347 and 2) |
| Defendants | Count Three: Conspiracy to Pay and Receive Kickbacks (18 U.S.C. § 371) |

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Criminal No.

Violations:

Count One: Conspiracy to Commit Health Care Fraud
(18 U.S.C. § 1349)

Count Two: Health Care Fraud; Aiding & Abetting
(18 U.S.C. §§ 1347 and 2)

Count Three: Conspiracy to Pay and Receive Kickbacks
(18 U.S.C. § 371)

Counts Four and Five: False Statements
(18 U.S.C. § 1001(a)(2))

Count Six: False Statement in Health Care Matter
(18 U.S.C. § 1035)

Count Seven: Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

Counts Eight-Fifteen: Money Laundering
(18 U.S.C. § 1957)

Forfeiture Allegations:
(18 U.S.C. §§ 981(a)(C), 982(a)(1) and (7), and
28 U.S.C. § 2461(c))

INDICTMENT

At all times relevant to this Indictment:

<u>General Allegations</u>

<u>The Medicare and Medicaid Programs</u>

1.      The Medicare program ("Medicare") was a federal health care program providing benefits to persons who are over the age of 65 or disabled.   The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), administered Medicare.

2.      Medicaid was a federal and state-funded health insurance program for children, disabled individuals, and families and individuals who fell below certain income levels. Massachusetts's Medicaid Program was commonly known as "MassHealth."   MassHealth reimbursed providers for certain home health care services that were certified as medically necessary by a physician.   MassHealth home health agencies provided three types of in-home care: nursing services; home health aide services; and therapy (physical, speech, occupational).

3.      MassHealth was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), in that it was a public plan affecting commerce, under which medical benefits, items, and services were provided to individuals, and included individuals and entities who were providing medical benefits, items, and services for which payment could be made under the plan.   Individuals who received MassHealth benefits were referred to as MassHealth "members."

4.       MassHealth and Medicare were "Federal health care programs," as defined by Title 42, United States Code, Section 1320a-7b(f), which provided health benefits directly, through insurance or otherwise, and which was funded directly, in whole or in part, by the United States Government.

5.      In order to become a Medicaid provider, home health care agencies in Massachusetts were required to be approved by the Medicare program.   Once an agency was approved by Medicare, the agency could file a MassHealth enrollment application to become a Medicaid provider.

6.      A home health agency enrolled as a Medicaid provider filed claims with MassHealth to obtain reimbursement for services provided to beneficiaries.   MassHealth reimbursed its providers based on a pre-determined fee schedule according to the service provided.   The claims were required to set forth, among other things, the beneficiary's name and Medicaid number, the services that were performed, the date the services were provided, and the billing procedure code associated with the services provided. The claims were submitted electronically.

7.      In order for a home health agency to bill MassHealth for home visits, a physician was required to certify that the services were medically necessary for the patient.   In pertinent part, medically necessary services were defined as those that were:

> reasonably calculated to prevent, diagnose, prevent the worsening of, alleviate, correct, or cure conditions in the member that endanger life, cause suffering or pain, cause physical deformity or malfunction, threaten to cause or to aggravate a handicap, or result in illness or infirmity.

130 Mass. Code Regs. 450.204(A)(1).

8.      In order to certify that services were medically necessary, a physician was required to sign a form titled Form CMS-485, Home Health Certification and Plan of Care ("Plan of Care"). The Plan of Care described the nature and frequency of the services to be provided to the member, and the type of professional who must provide them.   MassHealth home health agencies could not bill MassHealth for services unless and until a physician signed and dated the Plan of Care.[1]  The

---

[1] In certain circumstances, the provider could bill in reliance on a verbal order from a physician.

provider was required to maintain records substantiating the medical necessity of the services provided.

9.      Compliance with all applicable laws and regulations, including those applicable to Medicare and Medicaid, was a requirement for payment.   Medicare and Medicaid would not pay a provider for services if the provider did not have adequate documentation to substantiate the services.   Relevant regulations, as well as the provider's contract with Medicare and Medicaid, required the provider to maintain a complete medical record to include nursing notes and home health visit notes, detailing the date and type of services provided to the patient.   In addition, for home health aide visits, the provider was required to maintain a record of the types of tasks performed for the patient as well as the date and duration of these services.   These records were used as the underlying documentation supporting the services billed to the respective health care programs.

<u>The Defendants</u>

10.      Defendant FAITH NEWTON resided in Westford, Massachusetts.   NEWTON held a license as a registered nurse issued by the Board of Registration in Nursing ("Board of Nursing") for the Commonwealth of Massachusetts.

11.      NEWTON and her husband owned and operated Arbor Homecare Services LLC ("Arbor"), a home health care agency located at 1 Courthouse Way, Chelmsford, Massachusetts from in or about January 2013 through January 2017.   Arbor's MassHealth enrollment application was approved in August 2013.   In January 2017, MassHealth suspended all payments to Arbor. As a result of MassHealth's payment suspension, Arbor ceased operations.

---

In those instances, the physician was required to sign the Plan of Care within forty-five days.

12.     Defendant WINNIE WARURU resided in Lowell, Massachusetts.   WARURU was a Licensed Practical Nurse, licensed by the Board of Registration in Nursing.   WARURU was employed as a home health nurse at Arbor from in or about January 2014 through January 2017.

<u>Overview of the Health Care Fraud Conspiracy and the Scheme to Defraud</u>

13.     Between in or about January 2013 and January 2017, defendants NEWTON and WARURU, together with others known and unknown to the Grand Jury, devised a scheme and artifice to defraud health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit Medicare and MassHealth, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare and MassHealth, in connection with the delivery of and payment for health care benefits, items and services, by causing the submission of materially false and fraudulent claims for services to Medicare and MassHealth.

14.     Between January 2013 and January 2017, Medicare and MassHealth paid Arbor over $165 million for home health care services.   Over $100 million of those claims were fraudulent.   During that time, NEWTON and a family member paid themselves approximately $40 million from Arbor's profits.   NEWTON also paid WARURU over $450,000 for skilled nursing visits, many of which WARURU did not perform.

<u>Object and Purpose of the Healthcare Fraud Conspiracy</u>

15.     The object of the healthcare fraud conspiracy was to defraud Medicare and MassHealth by, among other things, causing the submission of materially false and fraudulent claims for services.   The purpose of the conspiracy was for NEWTON and WARURU to unlawfully enrich themselves and others.

Manner and Means of the Healthcare Fraud Conspiracy and Scheme to Defraud

16.     Among the manner and means by which NEWTON, WARURU and coconspirators known and unknown to the Grand Jury, carried out the conspiracy and the scheme to defraud were the following:

a.     Billing for home health care services that were not medically necessary or that were not authorized by a physician;

b.     Manipulating medical assessments of patients in order to make it falsely appear as if the patient required home health care services for assistance with activities of daily living;

c.     Billing for fictitious nursing services that were not rendered;

d.     Hiring patient family members as sham home health care aides;

e.     Paying kickbacks to individuals who recruited people who were enrolled as patients;

f.     Admitting purported patients for home health care services without their knowledge;

g.     Falsifying nursing notes, and

h.     Misrepresenting and/or concealing the misconduct described in subparagraphs (a) through (g) from Medicare and MassHealth.

Acts in Furtherance of the Healthcare Fraud Conspiracy and Scheme to Defraud

17.     NEWTON, WARURU and coconspirators known and unknown to the Grand Jury, carried out the following acts in furtherance of the healthcare fraud conspiracy and scheme to defraud:

a.     In January 2013, NEWTON falsely claimed that Patient 1 needed home health care services when Patient 1 did not.   For instance, NEWTON created false paperwork indicating that Patient 1 was "homebound," when Patient 1 was not, so that Patient 1 would qualify for reimbursement for home health care services under Medicare.   NEWTON also falsely claimed that

Patient 1 needed three skilled nursing visits per week and fraudulently billed Medicare for those visits.

b.      In the fall of 2013, after Arbor's enrollment to MassHealth had been approved, NEWTON readmitted Patient 1 to Arbor.   This time, NEWTON falsely claimed that while Patient 1 was "not homebound," Patient 1 required 14 skilled nursing visits per week, and fraudulently billed MassHealth for those visits.

c.      In February 2014, Newton hired Patient Recruiter 1 as a purported home health aide, but Patient Recruiter 1 never received the federally-mandated training required to become a home health aide.   Arbor began billing for Patient Recruiter 1's visits as if Patient Recruiter 1 was a bona fide home health aide, and even though Patient Recruiter 1 did not perform many of the visits.

d.      In 2015, Newton falsely signed off on an orientation checklist attesting to the fact that Patient Recruiter 1 had received training to become a home health aide that was never provided. The document was backdated to March 2014.

e.      On or about May 22, 2014, WARURU submitted nursing notes for Patient 2 purporting to document two skilled nursing visits that were never performed.   In fact, during the ten-month period for which Arbor billed MassHealth for twice daily skilled nursing visits on behalf of Patient 2, not a single visit was actually performed.

f.      In or about the middle of 2015, even though Patient 1's physician refused to sign the Plans of Care for Patient 1's continued home health care services, WARURU continued to bill MassHealth for twice daily skilled nursing visits.

g.      In or about September 2015, during an audit of Arbor by the Centers for Medicare and Medicaid Services ("CMS"), NEWTON and other coconspirators falsified documentation,

including nursing notes and Plans of Care, in order to hide the fact that they had billed MassHealth for services without physician orders.

### Overview of the Conspiracy to Pay and Receive Kickbacks

18.     From in or about January 2013 through in or about January 2017, NEWTON, WARURU and coconspirators known and unknown to the Grand Jury conspired to pay, and did pay, kickbacks to Arbor home health aides and others for recruiting and enrolling patients to Arbor, even when those patients did not need home health care services.

### Object and Purpose of the Kickback Conspiracy

19.     The object of the conspiracy was to pay kickbacks in connection with the referral of patients for home health care services reimbursed in whole or in part by Medicare or MassHealth. The principal purpose of the conspiracy was for NEWTON and WARURU to enrich themselves personally.

### Manner and Means of the Kickback Conspiracy

20.     Among the manner and means by which NEWTON, WARURU and coconspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

a.     Paying patient family members to serve as sham home health aides;

b.     Paying cash to patients in order to recruit and retain them as purported patients of Arbor, whether those patients needed services or not;

c.     Paying "referral bonuses" to patient recruiters for the enrollment of new patients, whether those new patients needed home health services or not; and

d.     Concealing the kickbacks from Medicare and MassHealth.

<u>Overt Acts in Furtherance of the Kickback Conspiracy</u>

21.     Between in or about January 2013 and January 2017, NEWTON, WARURU and coconspirators known and unknown to the Grand Jury committed and caused to be committed the following overt acts, among others, in furtherance of the conspiracy:

a.     In or about January 2014, WARURU passed cash payments from NEWTON to Patient 1 in order to retain Patient 1 as a patient of Arbor.

b.     In or about May 2014, NEWTON paid Patient Recruiter 1 $600 for recruiting patients to Arbor.  The payment was made by a check drawn from NEWTON's personal bank account rather than the Arbor account.

c.     On or about June 24, 2014, NEWTON met Patient Recruiter 1 at a fast food restaurant and paid the recruiter a kickback for referring patients to Arbor.

d.     On or about June 19, 2014, Patient Recruiter 2 texted NEWTON about two recent referrals asking, "who do I speak to about the referral Bonus?"   NEWTON responded by directing Patient Recruiter 2 to Co-Conspirator 1 ("CC-1"), the President of Arbor.

e.     On or about March 31, 2015, NEWTON texted Co-Conspirator 2 ("CC-2"), a senior employee at Arbor, about the need to recruit former Arbor patients: "We need to take them back. Let us play the game. We have the budget."

f.     On or about November 6, 2015, a patient recruiter texted NEWTON asking her if a patient's wife could be his home health aide.   NEWTON wrote back: "Wife? We do not need to

know who they are. They just need to apply … I do not like to due [sic] with anyone about patient issues especially such questions."

g.      On or about October 14, 2016, CC-1 endorsed a check for $1,834 from the Arbor Payroll Account with the memo line "kickback."

## COUNT ONE
### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

The Grand Jury charges:

22.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-21 of this Indictment.

23.     Between in or about January 2013 and January 2017, in the District of Massachusetts, the defendants,

(1) FAITH NEWTON and
 (2) WINNIE WARURU,

conspired with each other and with others known and unknown to the Grand Jury to commit health care fraud, that is, to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and MassHealth, and to obtain money and property owned by and under the custody and control of Medicare and MassHealth, by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO
### Health Care Fraud; Aiding and Abetting
(18 U.S.C. §§ 1347 and 2)

The Grand Jury further charges:

24.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-21 of this Indictment.

25.     Between in or about January 2013 and January 2017, in the District of Massachusetts, the defendants,

(1) FAITH NEWTON and
(2) WINNIE WARURU,

knowingly executed, and attempted to execute, a scheme and artifice to defraud a health care benefit program, as defined in Title 18, United States Code, Section 24(b), that is, Medicare and MassHealth, and to obtain moneys, and property owned by and under the custody and control of Medicare and MassHealth, by means of materially false and fraudulent pretenses, representations, and promises, in connection with the delivery of and payment for health care benefits, items and services, by submitting and causing to be submitted, false and fraudulent claims for services.

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT THREE
Conspiracy to Pay and Receive Kickbacks
(18 U.S.C. § 371)

The Grand Jury further charges:

26.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-14 and 18-21.

27.     From in or about January 2013, and continuing until in or about January 2017, in the District of Massachusetts, the defendants,

(1) FAITH NEWTON and
(2) WINNIE WARURU,

conspired with others known and unknown to the Grand Jury to commit an offense against the United States, that is, to knowingly and willfully offer and pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, to induce the referral of patients for home health services, for which payment may be made in whole and in part by a federal health care program, in violation of Title 42, United States Code, Section 1320a-7b(b)(2).

All in violation of Title 18, United States Code, Section 371.

## COUNT FOUR
False Statements
(18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

28.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-17.

29.     On or about April 24, 2017, in Lowell, in the District of Massachusetts, the defendant,

### (2) WINNIE WARURU,

knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, during an interview with a law enforcement agent, the defendant falsely denied billing for patient visits that she did not perform when in truth and in fact, as she then knew, she had billed for patient visits that she did not perform.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT FIVE
False Statements
(18 U.S.C. § 1001(a)(2))

The Grand Jury further charges:

30.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-17.

31.     On or about April 25, 2019, in Boston, in the District of Massachusetts, the defendant,

### (2) WINNIE WARURU,

knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, during an interview with a law enforcement agent, the defendant falsely claimed that she performed all of her skilled nursing visits when, in truth and in fact, as she then knew, she had not performed all of her skilled nursing visits.

All in violation of Title 18, United States Code, Section 1001(a)(2).

<u>COUNT SIX</u>
False Statement in Health Care Matter
(18 U.S.C. § 1035(a))

The Grand Jury further charges:

32.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-17.

33.     On or about December 22, 2016, in the District of Massachusetts, the defendant,

(2) WINNIE WARURU,

knowingly and willfully made a materially false, fictitious, and fraudulent statement and

representation in connection with the delivery of and payment for health care benefits, items and

services involving a health care benefit program as defined in 18 U.S.C. § 24(b), that is, WARURU

signed under pains and penalties of perjury an application for MassHealth falsely representing her

income.

All in violation of Title 18, United States Code, Section 1035(a).

## COUNT SEVEN
Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

The Grand Jury further charges:

34.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-21.

35.     NEWTON maintained multiple bank accounts at financial institutions, including linked checking and savings accounts at Bank of America, NA, a financial institution whose deposits were insured by the Federal Insurance Deposit Corporation.  NEWTON's checking account number ended in 9723 and the linked savings account number began with an additional number 1 ("BOA Savings 9723-1 Account").   Other co-conspirators obtained, kept, and maintained accounts at Bank of America, NA and other financial institutions, including credit unions, during and in furtherance of the conspiracy.

36.     Between in or about January 2013 and at least August 2018, in the District of Massachusetts, and elsewhere, the defendant,

(1) FAITH NEWTON,

conspired with others known and unknown to the Grand Jury to knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 where such property was derived from specified unlawful activity, that is, (1) conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349, (2) healthcare fraud, in violation of 18 U.S.C. § 1347, (3) conspiracy to pay and receive kickbacks, in violation of 18 U.S.C. § 371 and (4) paying and receiving kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)), in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS EIGHT - FIFTEEN
Money Laundering
(18 U.S.C. § 1957)

The Grand Jury further charges:

37.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-21 and 35.

38.     On or about the dates specified below, in the District of Massachusetts, and elsewhere, the defendant,

### (1) FAITH NEWTON,

knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the withdrawal, deposit, and transfer of funds from and to the financial institutions identified below, where such property was derived from specified unlawful activity, that is, (1) conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349, (2) healthcare fraud, in violation of 18 U.S.C. § 1347, (3) conspiracy to pay and receive kickbacks, in violation of 18 U.S.C. § 371 and (4) paying and receiving kickbacks, in violation of 42 U.S.C. § 1320a-7b(b)(2)).

| Count | Date (on or about) | Amount (Approx.) | Transaction |
|-------|--------------------|------------------|-------------|
| **8** | 10/3/2016 | $50,000 | Check number 313, dated October 1, 2016, paid from NEWTON's Bank of America, NA account ending 9723, for purchase of a 2013 Maserati Granturismo with Vehicle Identification Number ZAM45VMA0D0072451 |
| **9** | 10/3/2016 | $2,012,177 | Wire transfer from NEWTON's Bank of America, NA account ending 9723-1 to Robert Wyman, Esq., in connection with purchase of 440 Great Pond Road in North Andover, Massachusetts |
| **10** | 1/17/2017 | $100,000 | Check number 2111 paid from Arbor's Bank of America, NA account ending 7768 in connection with improvements to 440 Great Pond Road in North Andover, Massachusetts |
| **11** | 3/30/2017 | $1,000,000 | Check number 352 paid from NEWTON's Bank of America, NA account ending 9723 to Careplus Medical Transport account ending 4400 at Northern Bank & Trust Company |
| **12** | 11/30/2017 | $116,069 | Wire transfer from NEWTON's Bank of America, NA account ending 9723-1 to Elite Title Company in connection with purchase of real property at 20 Mill Street, Dracut, Massachusetts |
| **13** | 3/28/18 | $2 Million | Check number 421 paid from NEWTON's Bank of America, NA account ending 9723 to NEWTON's Northern Bank and Trust Company account ending 9700. |
| **14** | 7/24/2018 | $307,317 | Wire transfer from NEWTON's Bank of America, NA linked savings account ending 9723-1 to Robert Wyman, Esq. in connection with the purchase of Medicol, Incorporated |
| **15** | 8/20/2018 | $347,074 | Wire transfer from NEWTON's Bank of America, NA account ending 9723 in connection with purchase of real property at 12 Mountain View Drive, Dracut, Massachusetts |

All in violation of Title 18, United States Code, Section 1957.

FORFEITURE ALLEGATION
(18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7) and 28 U.S.C. § 2461)

The Grand Jury further finds:

39.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1347, 1349, 371, and 2, set forth in Counts 1-3, the defendants,

(1) FAITH NEWTON; and
(2) WINNIE WARURU,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), property, real or personal, which constitutes or is derived from proceeds traceable to violations of one or more of the offenses set forth in Counts One through Three; and pursuant to Title 18, United States Code, Sections 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of one or more of those offenses; and upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1956(h) and 1957, set forth in Counts 7 through 15, the defendant

(1) FAITH NEWTON,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.   The property to be forfeit includes, without limitation:

a.   real property located at 2 Woolsack Drive, Westford, MA;

b.   real property located at 440 Great Pond Road, North Andover, MA;

c.   real property located at 12 Mountain View Dr, Dracut, MA;

d.   American Equity Investment Life Insurance, Life Insurance Annuity, Account ###7785, in the name Faith Newton;

e.  all funds on deposit in Charles Schwab 529 Account number #######4801, held in the name Faith Newton FBO [a minor];

f.  all funds on deposit in Digital Federal Credit Union savings account ###3823-1, held in the name Faith Newton;

g.  all funds on deposit in Digital Federal Credit Union savings account ###3823-2, held in the name Faith Newton;

h.  all funds on deposit in Digital Federal Credit Union account, ###3823-5, held in the name Faith Newton;

i.  all funds on deposit in Citizens Bank account ######1946, held in the name Faith Newton;

j.  all funds on deposit in Citizens Bank account ######1997, held in the name Faith Newton;

k.  all funds on deposit in Citizens Bank investment account #####1584, held in the name Faith Newton Custodian [a minor] UTMA;

l.  all funds on deposit in Citizens Bank investment account ####9852, held in the name Faith Newton Custodian [a minor] UTMA;

m.  all funds on deposit in Citizens Bank investment account #####9427, held in the name Faith Newton;

n.  Security Benefit Life Insurance Company fixed annuity contract number ######4217, held in the name of the Newton Family Trust;

o.  Forethought Life Insurance Company, Index Annuity contract ######2754, held in the name of the Newton Family Trust;

p.  all funds on deposit in Northern Bank and Trust Company account ######9700, held in the name Faith Newton; and

q.  all funds on deposit in Northern Bank and Trust Company account ######7500, held in the name Faith Newton in Trust for [a minor].

40.    If any of the property described in Paragraphs 39 above, as being forfeitable pursuant to Title 18, United States Code, Section 981 and 982, as a result of any act or omission of the defendants –

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the Court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), and 28 U.S.C. § 2461(c), each incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraphs 39 above.

All pursuant to Title 18, United States Code, Sections 981, 982(a)(1) and (a)(7).

A TRUE BILL

FOREPERSON

RACHEL Y. HEMANI
DAVID G. LAZARUS
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: January __28__, 2021
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK

23